## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOMUS BWW FUNDING, LLC,** *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**ARCH INSURANCE COMPANY,** *et al.*,<br><br>*Defendants*. | **Case No. 2:23-cv-00094-JDW** |

## <u>MEMORANDUM</u>

No less an authority than Daniel Webster observed that to be a great lawyer, one "must first consent to be only a great drudge."[1] No part of legal practice better illustrates this maxim than discovery, which is, from start to finish, drudgery. As the data available to search multiplies, so does the drudgery required. Yet discovery rules promote efficiency, transparency, and the administration of justice, three interests I don't take lightly and that I expect the lawyers before me to honor. So, while lawyers might not enjoy it, they have to take their discovery obligations seriously.

In this case, Arch Insurance Company and its counsel didn't take discovery obligations seriously. Over the course of discovery, Arch has shown carelessness, a lack of

---

[1] Letter from Daniel Webster to Thomas Merrill (Nov. 11, 1803) in *The Writings and Speeches of Daniel Webster*, vol. 17, 148-49 (Fletcher Webster ed. 1903).

diligence, and indignation at any criticism of its conduct. A few examples lay bare Arch's

indignation.

- Arch and its counsel didn't locate relevant hard copy documents belonging to a key witness in the case, even though the witness told them she had such documents. When challenged on this issue, Arch's counsel doubled down and assured me that the documents didn't exist. After I pressed the issue at a sanctions hearing, Arch managed within a few days to find the documents it told me didn't exist. (Oops!)

- Arch and its counsel entrusted the collection of electronically stored information to an in-house paralegal, who appears to have acted without lawyer supervision. She then dropped the ball and failed to collect the ESI on the schedule to which the parties had agreed. Arch's counsel decided not to tell opposing counsel about that error and permitted them to take depositions and issue expert reports without the information because Arch's counsel didn't think there would be any meaningful information in the ESI. (Wrong!)

- Between the time that Arch was supposed to collect and review ESI (per its agreement with its opponent) and the time that Arch did, in fact, retrieve and review ESI, Arch lost emails from an underwriter on the file who also weighed in on the coverage decision at issue in this case. (Uh-oh!)

Overall, Arch and its counsel demonstrated a cavalier attitude towards discovery

obligations. And while some of Arch's failings have proven harmless (or nearly harmless),

the loss of ESI from a key custodian is not harmless. It is sanctionable, and I will impose

sanctions as a result.

## I.   BACKGROUND

Domus BWW Funding LLC and 1801 Admin, LLC (collectively, "Domus") seek

insurance coverage from Arch and at least one excess carrier for defense costs in an

underlying civil dispute. Domus notified Arch of the claim in July 2018. Lynne Miller was

Arch's assigned claims adjuster. Greg McGowan was a policy underwriter. Arch denied

coverage in December 2019. Domus sought reconsideration of the denial several times in

2020 and 2021.

Arch issued a litigation hold to document custodians, including Ms. Miller and Mr.

McGowan, in October 2022. In response to Arch's litigation hold, Ms. Miller stated she

had responsive documents in "Outlook, ImageRight ... Hard Copy Documents [and] Home

Drive (H:)." (ECF No. 104-12.) Mr. McGowan stated he may have responsive documents in

"Outlook, ImageRight ..., [and] Home Drive on Work PC." (*Id.*) Mr. McGowan left the

company in late 2022.

### A.    The ESI Issues

Domus filed this case as an adversary action in Bankruptcy Court on September 27,

2022. On January 5, 2023, at the Parties' request, I withdrew the reference from the

Bankruptcy Court. On March 15, 2023, I held a scheduling conference pursuant to Rule16.

In advance of that conference, the Parties submitted to me a report of the conference that

they conducted pursuant to Rule 26(f). That report included an agreed-upon schedule for

substantial completion of document production. I did not include that deadline in a

scheduling order, though.

In April 2023, the Parties agreed on ESI search terms. Arch delegated to an in-house

paralegal the process of using search terms to collect a review set of ESI. However, due to

an error that Arch ascribes to that paralegal, the ESI search "fell through the cracks." (ECF

No. 112 at 4.) Arch made an initial document production on May 15, 2023. Then, on June 8, 2023, the Parties agreed to extend the deadline for substantial competition of document production to June 30, 2023. By June 30, 2023, Arch had produced approximately 100 documents to Domus.

As June 30 approached, Arch's outside counsel Dan Layden knew that Arch had not provided his law firm with an ESI data set and "wasn't certain whether that would be done by the June 30th date … ." (ECF 127 at 6.) However, Mr. Layden did not alert Domus's counsel to that issue. In late June 2023, Mr. Layden followed up with Arch's in-house paralegal to remind her to run the search, but he did not get a response. During a hearing on this Motion, Mr. Layden explained that he didn't do much to follow up because it's "often the case that there are no files that are not contained in the claims file or any other file discovered through ESI" and so he "assumed that there was nothing gathered because there was nothing present. So there was no need to follow up." (*Id.* at 7.) Even though Mr. Layden claims that he thought the ESI search was likely not to bear fruit, he did follow up in August with Arch's paralegal.

Sometime in the summer of 2023, Arch undertook a corporate data migration. During that migration, someone put an incorrect tag on Mr. McGowan's emails (which Arch had preserved after Mr. McGowan left the company). As a result, Mr. McGowan's emails were deleted. Because Arch didn't learn of that deletion until later in the case, any backup tapes with Mr. McGowan's emails have also been overwritten.

4

In September 2023, Mr. Layden learned that no one at Arch had run ESI search terms or gathered an ESI review set. Yet neither he nor anyone else on the Arch defense team shared that information with Domus, even though the case was proceeding towards depositions and expert disclosures. On October 2, 2023, Arch finally provided its outside counsel with an ESI review set that contained thousands of documents. Arch's outside counsel sent the review set to a vendor to process. On October 14, 2023, the vendor returned the data set, which at that point contained approximately 12,000 documents. But Arch's counsel still did not tell Domus that Arch had yet to produce those materials because it continued to believe that there wasn't a "reason to think those documents … would impact the deposition of Ms. Miller." (*Id.* at 10.) Even when Ms. Miller's deposition occurred on November 2, 2023, Arch said nothing about its continuing review of the ESI data set.

Ms. Miller's deposition testimony caused Domus to follow up with Arch about Arch's document production. On November 14, 2023, Mr. Layden for the first time told Domus that Arch had not yet made a production of ESI materials because the search was not run in the timeframe to which the Parties agreed. When Arch finally did make a production of the ESI materials, it produced approximately 300 documents. It agreed to make Ms. Miller available for an additional deposition, and it agreed to permit Domus to supplement the expert reports that it had already served. Domus took Arch up on that proposal in an effort to cure the harms it had suffered.

**B.      Ms. Miller's Hard Copy Documents**

In July 2021, Ms. Miller began working from home. At that time, she came to the office, removed her belongings, including some files, and "otherwise moved files that were hard copies from her cubicle." (ECF No. 127 at 71.) Ms. Miller also informed Ms. Diane Olsen, Arch's Executive Office Administrator, that she had transferred some hard copy files to an on-site filing cabinet. Given Ms. Miller's response to the document hold, which referenced hard copy documents, Arch searched Ms. Miller's cubicle and surrounding filing cabinets for any hard copy files at some point in 2023, but it didn't find any documents.

In its response to this motion, Arch includes a heading that reads "The (Non-Existent) 'Hard Copy Documents.'" (ECF No. 112 at 8.) It then explained that, in its view, Ms. Miller's response to the document hold memo "identified locations where she *might* have such documents, but, it turns out, she was wrong." (*Id.* at 9 (emphasis in original).) It reiterated that assertion later in its response, asserting that the hard copy documents "never existed in the first place." (*Id.* at 16.) At the hearing on this motion, Arch's counsel Ronald Schiller again told me with respect to Ms. Miller's hard copy documents that "there are no materials for this claim." (ECF No. 127 at 74.)

At the conclusion of the hearing, I directed Arch to get a declaration to set forth in more detail the information about Ms. Miller's files. On July 12, 2024, Arch submitted three declarations that explained that Arch's in-house counsel searched three columns of

6

file cabinets in the hallway behind Ms. Miller's former cubicle. That search yielded eight file folders that reference this claim. (*See* ECF 129-2 at ¶ 5.) Arch claims that it had no reason to search those files until I held the hearing. These newfound files led Arch to produce 399 pages, including drafts of coverage letters and Ms. Miller's notes, despite the fact that Arch had assured me that no such documents existed.

### C.    Domus's Sanctions Motion

Domus filed this motion on April 5, 2024, in the midst of the Parties' summary judgment briefing. I held a hearing on June 26, 2024. The Motion is ripe for review.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party must supplement or correct a discovery disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). When a party fails to supplement its disclosure and does so without showing that "the failure was substantially justified or is harmless," a judge may impose a range of sanctions on the party or its counsel. Fed. R. Civ. P. 37(c)(1); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). "Substantial justification" means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Grider v.*

*Keystone Health Plan Central, Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009) (quotation omitted).

When a party spoliates tangible evidence, judges may use the court's inherent powers to sanction the spoliator. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994). Judges in the Third Circuit may find spoliation of tangible evidence has occurred when "the evidence was in the party's control; the evidence is relevant to the clams or defenses in the case; there has been actual suppression or withholding of evidence; and[] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted).

ESI spoliation occurs when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be replaced through additional discovery." Fed. R. Civ. P. 37(e). To impose sanctions pursuant to this rule, a judge must find that (A) the spoliating party had a duty to preserve information when the loss occurred; (B) the lost ESI was within the scope of that duty to preserve; (C) the spoliating party's failure to take reasonable steps to preserve the information led to its loss; and (D) the information is truly lost, *i.e.*, it cannot be otherwise recovered. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

The Federal Rules contemplate two remedies for ESI spoliation. When the loss of information prejudices a party, a judge may order "measures no greater than necessary

8

to cure the prejudice." Fed R. Civ. P. 37(e)(1). Appropriate sanctions include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

When a party destroys electronically stored information "with the intent to deprive another party of the information's use in the litigation," a judge may presume the information was unfavorable to the infracting party, instruct the jury that it may or must presume the information was unfavorable, or dismiss the action. Fed. R. Civ. P. 37(e)(2). Because bad faith is rarely evident on its face and judges cannot directly observe a party's motivation for spoliating, judges may consider circumstantial evidence to determine intent. *See, e.g.*, *Bistrian v. Levi*, 448 F.Supp.3d 454, 475 (E.D. Pa. 2020) (Rufe, J.). Judges in this district have considered (1) the timing of the destruction; (2) the method of destruction; (3) whether destruction was selective or indiscriminate; and (4) the spoliating party's policies for retention and destruction. *See id.* I agree that these factors are instructive, though not exhaustive.

## III.   ANALYSIS

### A.   The ESI Search

Arch's delayed ESI search demonstrated counsel's disdain for discovery obligations in the case. Arch didn't collect and produce the ESI on the schedule that the parties had

agreed. It concealed from Domus for months the fact that it hadn't made the required production and permitted Domus to move forward with depositions and expert disclosures on the assumption that Arch had completed its discovery obligations. And, at the hearing, Mr. Layden told me point blank that he was dismissive of the discovery obligations because he didn't think the ESI search was likely to yield information. I can't determine whether Mr. Layden's explanation for these failures is an after-the-fact rationalization for the discovery failures or demonstrates his, and more generally Arch's, attitude towards discovery obligations during the search, but either way, they are problematic.

The Parties' conduct demonstrates that they thought ESI searches were important. They took the time to negotiate an ESI stipulation, search terms, and relevant custodians. The other Parties to this case engaged in ESI searches. It also strains credulity to think that, in this day and age and in a case involving corporate parties, anyone could blithely expect ESI searches not to yield valuable information in discovery. I therefore find Mr. Layden's explanation to be somewhere between dismissive and disingenuous.

Arch's approach is troubling. As a simple matter of professionalism, Mr. Layden (who told me he was the person on the defense team handling Arch's ESI collection) should have been more involved in the collection of ESI. *See E.E.O.C. v. M1 5100 Corp.*, Civil No. 19-cv-81320, 2020 WL 3581372, at * 4 (S.D. Fla. July 2, 2020). He should have

followed up sooner when Arch did not provide the ESI review set, and he should have communicated with Domus's counsel about the status of the ESI.

Arch's approach led to a substantial delay in the collection of ESI. That delay, and Arch's decision not to disclose the delay to Domus, led to added burdens on Domus in the case when it had to re-open Ms. Miller's deposition and prepare revised expert disclosures. The delay also led to the loss of Mr. McGowan's emails, which Arch destroyed during the time between when Arch had agreed to collect ESI and the time that it finally got around to doing the collection. Domus seeks sanctions for each of those impacts.

### 1.    Timing

Arch's delayed ESI production didn't violate any court order because I didn't order the substantial completion of document production by a certain date. But Arch violated its agreement with Domus concerning document production and then misled Domus into thinking Arch's production was complete. Arch's delayed production of ESI might also have violated Arch's duty to supplement its document requests in a timely way.

I expect more from the lawyers before me than the sloppy approach in which Arch engaged. Nonetheless, I decline to impose monetary sanctions because of Arch's conduct. Domus didn't file a motion to compel production of documents based on the ESI searches, so the Federal Rules don't require that I impose monetary sanctions. *See* Fed. R. Civ. P. 37(a)(5)(A). In fact, the Federal Rules prohibit monetary sanctions when "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). This is such a case. Arch

showed a wanton disregard for its duty to provide fulsome, timely discovery to Domus, but Domus didn't seek my assistance to remedy this discovery issue. Instead, Domus engaged in self-help after discussions with Arch and then waited until the parties were in the midst of summary judgment briefing to bring the issues to my attention. A *post hoc* motion for sanctions is not the appropriate vehicle to address the prejudice Arch's negligent approach to discovery incurred. I have made clear to the Parties my willingness to engage with them on matters of case management; Domus should have taken me up on that in a timely way.

In addition, while I conclude that Arch's conduct multiplied the proceedings, it's not clear by how much. Had Arch made a timely production of ESI, then Domus would have inquired of Ms. Miller about the documents that Arch produced, just as it ultimately did. Certainly, there was some added cost to the meet-and-confers, and maybe a little additional ramp up for the reopened deposition, but on balance, I conclude that Domus's decision to press forward on its own, with its own remedies for Arch's misconduct, makes a later request for relief inequitable. I might have managed the situation differently than Domus did, but Domus's approach deprived me of that opportunity.

### 2. Loss of Mr. McGowan's emails

Arch lost Mr. McGowan's emails due to its lackadaisical approach to collecting ESI. It acknowledges that Mr. McGowan had relevant ESI. Arch preserved the documents when Mr. McGowan left the company. Had Arch ensured a timely collection of ESI, it would have

gathered Mr. McGowan's ESI and included it in the review set that it provided to its outside counsel. Instead, during the time when the collection should have happened and the time that the collection did happen, Arch deleted the documents.

Arch's argument that the destruction was accidental misses the point because it doesn't address the temporal element. If Arch had destroyed Mr. McGowan's emails in January 2023, the outcome of this Motion might be different. But Arch never grapples with the fact that, if it had been more diligent about collecting the ESI, then it would have completed that collection before the data migration in the summer of 2023 that led to the destruction of Mr. McGowan's emails. So, regardless of whether Arch's data preservation steps were reasonable, they wouldn't have been in question if Arch hadn't been so dismissive of the need to collect and review ESI.

Arch also claims that it has located all of Mr. McGowan's relevant emails by searching other custodians at Arch with whom Mr. McGowan communicated. Maybe. But it's equally plausible that Mr. McGowan sent and received emails to and from Arch employees whose copies were also destroyed, or that he corresponded with individuals not within the scope of Arch's search. Given Arch's quickness in this case to insist information doesn't exist, only to be proven wrong later, I won't take counsel at their word now. To the contrary, the problem with lost ESI (or other lost documents) is that it's impossible to know what has been lost. There's a reason that Arch was preserving Mr. McGowan's ESI after he left the company: so that Arch could review and produce the

relevant materials. It's likely that some of that would have been duplicative of material that Arch has gathered from other custodians, but Arch can't say with certainty that all of it would have been duplicative.

I don't find that Arch destroyed Mr. McGowan's emails with the intent to deprive Domus of the information's use in litigation, so I can't impose any of the sanctions available under Rule 37(e)(2). Arch destroyed Mr. McGowan's emails while there was a litigation hold in place, but it did so as part of what appears to have been a company-wide transition. The "timing of the destruction" factor is therefore neutral. And Mr. McGowan's emails appear to have been automatically deleted or overwritten, which cuts against a finding of intent. Based on the information available to me, it's not as if Arch, via its IT department, affirmatively deleted the emails and took additional steps to erase backup copies. This factor tips in Arch's favor. That the deletion was not selective, *i.e.*, Arch did not delete harmful emails but preserve those containing information neutral or helpful to Arch's position, suggests that this was an honest mistake and not bad faith. Finally, the destruction appears to have been the result of operator error during a standard procedure for system migration, so this factor weighs in Arch's favor. Considering the circumstantial evidence, I can't conclude that Arch satisfied Rule 37(e)(2)'s intent requirement.

However, I do find that the destruction has prejudiced Domus, so I will impose sanctions pursuant to Rule 37(e)(1) and order measures no greater than necessary to cure the prejudice. Domus didn't learn that Arch had destroyed Mr. McGowan's emails until

January 2024, or that no backup existed until February 2024, over a year after the time of destruction and well after the close of discovery. I am not convinced that Arch's destruction was harmless, either. I find there is a reasonable likelihood that some of Mr. McGowan's emails were permanently destroyed.

Therefore, to the extent that this case proceeds to trial, I will permit Domus to introduce evidence of Arch's failure to preserve Mr. McGowan's emails, and I will craft appropriate jury instructions at the time of trial to ensure that this sanction does not collapse into the adverse inferences available only under Rule 37(e)(2).

## B.    The Hard Copy Documents

A party has a duty to provide fulsome discovery. That means taking reasonable measures to acquire and turn over relevant information. Arch didn't do that here. Time and again, Arch learned information that suggested that Ms. Miller had relevant hard copy documents. For months, in the face of that evidence, Arch insisted that the documents didn't exist, both in discussions with Domus and in representations that it made to me pursuant to Rule 11. All this despite Ms. Miller stating on multiple occasions that her practice as a claims handler is to make physical notes during the claims process. Arch's protestations, of course, turned out to be wrong. Luckily for Arch, though, the failure to provide Ms. Miller's hard copy documents appears to be the result of incompetence rather than malice, and it has now located and produced those documents.

"Spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent." *Bull*, 665 F.3d 68, 79. Arch was sloppy and stubborn, but nothing in the record before me suggests that it intended to hide Ms. Miller's hard copy files. Arch has offered an explanation for why it didn't search the file cabinets near Ms. Miller's cubicle, and while that explanation doesn't excuse the failure, it gives context to it. The record bears on Arch's diligence, not its intent.

That said, Arch's production was late, and Domus has lost the opportunity to follow up on that production. So, in fairness to Domus, I will permit Domus to reopen discovery, and, to the extent Domus's additional discovery is reasonable, I will require Arch to pay for it. The Parties will have to confer and provide me with a proposal (or proposals) for this additional discovery.

## IV.   CONCLUSION

Arch's approach to discovery in this case is cavalier, at best. It ignored its obligations, and it turned indignant when confronted with its failures. I find its approach troubling, and it falls well below what I expect from the lawyers who appear before me. The record demonstrates that Domus was justified in its concerns, even if Arch won't admit as much. Arch's misconduct has prejudiced Domus's ability to make its case, so I will impose sanctions to deter future misconduct and to offset the prejudice that Arch has caused. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

August 12, 2024